206 So.2d 340

**W. D. PINCKARD**

v.

**Charles Raymond DUNNAVANT.**

4 Div. 294.

Supreme Court of Alabama.

Jan. 11, 1968.

534

Thos. F. Parker, Montgomery, for appellant.

Oliver W. Brantley and John W. Gibson, Troy, for appellee.

HARWOOD, Justice.

Suit below was for damages resulting to the plaintiff when he allegedly fell into a grease pit located on the premises of the Truck City Truck Stop, a combination filling station and restaurant.

The complaint was in two counts and named W. D. Pinckard and James T. Elmore as defendants.

Count 1 charged the defendants with the negligent maintenance of the premises, while Count 2 charged wantoness in such maintenance.

The defendants' demurrer to the complaint being overruled, the defendants filed a plea of the general issue and a plea of contributory negligence. In addition, the defendant W. D. Pinckard filed a plea asserting that at the time in question he was not engaged in the business of maintaining the truck stop (Plea III), and an additional plea to the effect that at the time of the alleged injury to the plaintiff, the premises had been leased by the defendant Elmore (Plea IV).

The court sustained the plaintiff's demurrer to Plea III, and at the start of the trial the defendant withdrew Plea IV. Thus issue was joined on the complaint and the pleas of the general issue and of contributory negligence.

The jury returned a verdict in favor of the plaintiff and against the defendant W. D. Pinckard only, damages being assessed at $7,000. Judgment was entered pursuant to the verdict.

Pinckard's motion for a new trial being overruled, an appeal was perfected to this court.

The plaintiff's evidence tended to show that on 21 February 1967, at about dark, the plaintiff drove into the truck stop and parked his car near a small building adjacent to the restaurant portion of the premises. He went into the restaurant and had a cup of coffee. He inquired for Mr. El-

more but he was not about. Leaving the restaurant, he returned to his automobile and as he was opening his automobile he saw someone in the rear of the restaurant as a door was opened temporarily. He thought it was Mr. Elmore and he started to walk to where this person was seen. Almost immediately he fell into the grease pit. He called for help but no one came to him and with effort he got out of the grease pit and to his automobile. He drove to his home and by sounding his automobile horn, he attracted the attention of his wife and mother. They came to his automobile and helped him into the house.

The two women removed his wet and greasy clothes. The plaintiff was in considerable pain, and his mother called Dr. Golden. The doctor could not be located that night, and home remedies such as hot and cold packs were applied to plaintiff's swollen knee.

The next day, 22 February 1967, Dr. Golden was reached at a hospital, and he came to the plaintiff's home that night.

Dr. Golden testified that when he examined the plaintiff, he found his knee badly swollen, concluded it was an orthopedic case, and either called Dr. Johnson, an orthopedic specialist in Dothan, or told the plaintiff to go to Dr. Johnson. Dr. Golden testified he probably gave the plaintiff some sedatives on the occasion of his visit but otherwise did not treat him.

The next day the plaintiff went to Dr. Johnson. Dr. Johnson found the knee swollen and tender. X-rays revealed a fracture inside the knee joint involving the upper end of the tibia that extended "through the spikes of bones that are there to hold the ligaments of the knee." A long cast was placed on the right leg. The cast remained on the leg for four weeks, when the plaintiff was allowed to use crutches "without any weight bearing." A week later, the plaintiff was allowed to use a cane. Dr. Johnson last saw the plaintiff on 27 April 1967. At this time the range of motion in the knee was normal, and the ligaments were normal. X-rays revealed the fracture had healed. The plaintiff testified he was physically unable to return to his work as a heavy machine operator until 1 July 1967.

The plaintiff also read to the jury the pre-trial depositions of Pinckard and Elmore. Both testified that Pinckard was the owner of the premises on which the bus stop business was located. Under an oral agreement between the two, Elmore was to operate the filling station and was to receive 4¢ per gallon on each gallon of gasoline sold, and 2¢ per gallon on the diesel oil, and Elmore was to get the use of the restaurant building free of rent. The income from music boxes in the restaurant was to be split fifty-fifty.

Elmore testified that Pinckard maintained the premises, checked the pumps, did any needed painting, and maintained the driveways. Pinckard had filled in a gully near the driveway after Elmore had first moved there. Elmore testified that the fuel and oil was not owned by him, but was sent to him on consignment. Shortly after the accident in question two men whom Elmore did not know came by and filled in the grease pit.

Pinckard's testimony by deposition does not differ materially from that of Elmore. However, as a witness in the trial below, Pinckard testified that Elmore alone was responsible for the maintenance of the premises.

During the cross examination of Pinckard, the court overruled his objection to questions eliciting testimony that he had an insurance policy protecting him against damages to persons on the premises in question, and that he had had the grease pit filled up after the accident upon instructions from his insurer.

In overruling the objections to these questions, the court carefully instructed the jury that such evidence was being admitted solely on the question of who was responsible for the maintenance of the premises.

By appropriate assignments of error Pinckard, the defendant below, now the appellant here, has raised and argued the propriety of these rulings.

■ The general rule is well settled that in an action for personal injuries evidence that a defendant carries insurance protecting him from liability to third persons on account of his negligent misconduct is inadmissible. Thorne v. Parrish, 265 Ala. 193, 90 So.2d 781; Birmingham Electric Co. v. Carver, 255 Ala. 471, 52 So.2d 200; Colquett v. Williams, 264 Ala. 214, 86 So. 2d 381.

■ However, where the fact of insurance is relevant and material to an issue in the case, and where it is collateral to other material facts, or is necessary to fully present the issues involving a legal right of the plaintiff, then the existence of insurance may be shown when such evidence is limited to the issues in question. See Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757, where this principle is discussed in detail with numerous citations of authorities from this court and the courts of our sister states.

■ Here, a paramount issue was whether Pinckard was responsible for the maintenance of the premises in question. The fact that he had procured insurance protecting him from liability for injuries to third persons on the premises tended to shed light on this issue, as did the admission of the evidence that Pinckard, on instructions from his insurer, had filled the grease pit shortly after the accident, the court carefully instructing the jury that such evidence was to be considered as going solely to the question of who maintained the premises.

■ Counsel for appellant further argues that since the demurrer was sustained to Plea III, and Plea IV was withdrawn at the start of the trial, any claim that the appellant did not maintain the premises was abandoned.

This argument overlooks the fact that the appellant had pleaded the general issue, and that defense that appellant was in nowise responsible for the maintenance of the premises would be available under the plea of the general issue. In fact, in his testimony as a witness, Pinckard maintained that Elmore was the person responsible for the maintenance of the premises.

Appellant's assignment of error No. 8 relates to the action of the lower court in overruling appellant's objection to certain portions of appellee's final argument concerning damages sustained by the appellee, the objection being on the ground that counsel for appellee had failed to argue damages in his opening argument, and counsel for appellant would have no opportunity to answer such line of argument.

In this connection, the record shows the following:

"(Further during Mr. Gibson's argument to the jury the following took place.) (Mr. Gibson has been arguing to the jury the itemization of the damages Mr. Dunnavant suffered such as hospital bills, doctor bills, loss of time from work.)"

■ This objection does not show the time or sequence in the argument of Mr. Gibson when the alleged objectionable portions of the argument occurred. As stated in Birmingham Railway, Light & Power Co. v. Gonzales, 183 Ala. 273, 61 So. 80:

"To put a trial court in error, it should, in general, be made to appear that its ruling was appropriately invoked upon the utterance of the supposedly improper remarks." (Citations omitted.)

Further, the record shows that after Mr. Brantley, who was Mr. Gibson's associate as appellee's counsel, had entered upon his opening argument, counsel for appellant requested that the court reporter take down the remaining portion of Mr. Brantley's argument, and this was done. No portion of the argument by counsel for the

appellant was taken down by the court reporter, nor was Mr. Gibson's reply argument recorded by the court reporter.

In his order overruling appellant's motion for a new trial, the court observed:

"An examination of that part of Mr. Brantley's summation for plaintiff, which was transcribed and offered into evidence by the defendant, will reflect that he did argue *injuries* as may be distinguished from damages in amounts of dollars and cents. He did not point out any certain amount for any specific item of damages claimed."

Counsel for appellant argues that error resulted in the court's ruling in this instance because of the doctrine prevailing in some states that "it is generally improper for counsel having the burden of issues in a civil case to argue new matter or points in his closing summation, after his opponent's argument, where such matter was not argued, discussed, or mentioned in his opening summation." See Annotation in 93 A.L.R.2d pp. 274–282. We have found no Alabama case on this point.

■ Due to the fragmentary state of the record, we do not see how we could intelligently review this point without resort to much speculation. But this aside, the pleadings claimed damages, and the appellee introduced evidence as to damages incurred as a result of his injuries, such as medical bills, loss of earnings, pain and suffering, etc. Such injuries were alluded to in Mr. Brantley's opening argument. We cannot see, therefore, that the mere itemization of the damages resulting from these injuries constituted any new matters or issues not already substantially presented. In other words, Mr. Gibson's argument did not amount to a departure from the issues of the case, and did not amount to any change of position.

No error will be cast upon the lower court in its ruling in this instance.

Appellant's assignment of error No. 9 alleges error because of the denial of the request of appellant's counsel that he be permitted to make a rebuttal argument to Mr. Gibson's final argument concerning damages.

What we have written as to assignment of error No. 8 is dispositive of this alleged error.

Appellant's final argument relates to the overruling of appellant's motion for a new trial, under which appellant argues that ground of the motion for a new trial asserting excessiveness of the damages awarded.

In the trial below the evidence by the appellee tended to establish special damages (medical expenses, loss of wages, etc.) in the amount of $2,640.00, leaving $4,360.00 of the damages referable to pain and suffering and punitive damages.

■ Count 2 was a wanton count. The verdict was a general verdict. The judgment is therefore referable to the wanton count, under which punitive damages may be assessed. Punitive damages need bear no mathematical relationship to actual damages unless so great as to shock the judicial conscience. Foster v. Floyd, *276 Ala.* 428, 163 So.2d 213.

■ We find no justifiable basis under the evidence authorizing us to disturb the trial court's conclusion that the amount of damages fixed by the jury was not warranted.

Affirmed.

LAWSON, SIMPSON and MERRILL, JJ., concur.