Samuel ADAMS, Plaintiff-Appellee,

v.

FORD MOTOR CREDIT COMPANY, Defendant-Appellant.

No. 76–1431.

United States Court of Appeals, Fifth Circuit.

July 27, 1977.

Rehearing Denied Sept. 2, 1977.

N. T. Braswell, III, William B. Moore, Jr., Montgomery, Ala., for defendant-appellant.

Joe C. Cassady, Enterprise, Ala., for plaintiff-appellee.

Before TUTTLE, TJOFLAT and HILL, Circuit Judges.

TUTTLE, Circuit Judge:

The credit company appeals from a judgment in favor of an automobile purchaser to whom the trial jury made an award of $20,000 as compensatory and punitive damages because of its finding that the finance company had illegally repossessed his automobile.

The action was commenced by the filing of a complaint which the appellant characterizes as follows: "Claiming damages of $4,000 for the conversion of an automobile, $1,000 for the conversion of several smaller items of personal property contained therein, and $9,900 for the wrongful taking of all of the above chattels." The defendant caused the case to be removed to the federal court on the ground of diversity of jurisdiction, whereupon the plaintiff amended his complaint by deleting several of the smaller items of personal property and enlarged his ad damnum to $100,000 for punitive damages and later amended to include a count for conversion of the automobile and other chattels raising his ad damnum for this count to $100,000. The defendant filed its counterclaim for a deficiency on the conditional sales contract for $1,734.18.

The dispute that came before the jury for its resolution arose after the plaintiff signed a conditional sales contract for the purchase of an automobile. It was the plaintiff's story, believed by the jury, that because of a mistake made by the company in the precise amount due on the monthly notes, a representative of the company told him by telephone that he should not make any more monthly payments until the affair was straightened out. It was the company's contention that no such instructions were given, and that because payments were not forthcoming when due (only six payments having been made during a period of approximately one year during which 18,000 miles had been put on the automobile) the finance company made an effort to get in touch with the plaintiff, but being unsuccessful, it sent a wrecker and removed the car bodily from the parking lot adjacent to plaintiff's office as it claimed to have the right to do under the conditional sales contract.

The defendant here contends that the trial court erred in letting the jury consider the charge in the complaint that the car's taking by the defendant amounted to a trespass, since, as appellant contends, Alabama law classifies such a taking as a "trespass de bonis asportatis." Such a claim, appellant contends, must demonstrate that the claimant had a possessory interest in the subject chattel; that the defendant through the use of force damaged that possessory right. It is contended that the taking in the absence of the claimant makes impossible a successful claim of trespass.

We need not decide whether such a technical rule still applies where the only basis for the claimant's complaint is a wrongful taking in an action of trespass, for it is perfectly clear that the Alabama courts recognize a right of action for conversion. *Bank of Huntsville v. Witcher*, Ala.Civ. App., 336 So.2d 1384, 1387.

■ More significantly, the appellant made no objection to the charge given to the jury by the trial court. A failure to

object to the charge with respect to the trespass count prevents the appellant from urging that the submission of such count was harmful error in that it permitted the jury to have before it a count which was not substantiated by the evidence, because the trial court was not put on notice that the defendant objected to the method of presenting the issue to the jury.

Towards the close of the trial, the trial court said to counsel that it appeared to him that the whole issue was whether the jury believed the plaintiff's or the defendants' witnesses as to whether there had been a default. Both counsel affirmatively responded to this statement as being the sole issue in the case. It would be strange indeed if we were to hold that one party could now contend that the trial court improperly submitted the issue to the jury.

Appellant further complains both of the charge to the jury that punitive damages were permissible and to the amount of punitive damages awarded. The court's charge with respect to punitive damages was sketchy indeed:

> "I charge you further that Samuel Adams will not be entitled to recover punitive or exemplary damages or damages for the purpose of punishing Ford Motor unless the plaintiff sustains his burden of proving that the trespass—that is, the illegally going and entering and taking the property—to his personal property or the conversion of his personal property was committed in a rude or insulting or a malicious or reckless or wanton manner, or that this trespass or conversion was accompanied by circumstances of aggravation or impression or that the conversion was committed in a willful and intentional violation of the plaintiff's rights; and unless such facts are proven by Adams to your reasonable satisfaction, then the law says that you jurors cannot under any circumstances award damages for the purpose of punishment, that is, punitive damages."

Both parties announced that they were satisfied as to the court's charge. Now, however, appellant complains that the court should not have permitted the issue of punitive damages to have gone to the jury because it states that it is clear that in Alabama, the measure of damages for conversion is the ordinary value of the property at the time of the conversion, citing *Treadwell Ford, Inc. v. Wallace*, 49 Ala.App. 308, 271 So.2d 505 (1973) and contending that "punitive damages cannot be recovered in trover for a conversion unless the conversion was accompanied by acts of outrage, insult, malice, or unless the conversion was committed in known violation of one's rights and in violation of the law," citing *Ray Hughes Chevrolet, Inc. v. Gordon*, 294 Ala. 638, 320 So.2d 652.

■ Although, as we have stated, no objection was made to the commission of the issue of punitive damages to the jury, it is nevertheless clear that the *Ray Hughes* case cited by the appellant clearly authorizes the recovery of punitive damages where the conversion was committed in known violation of one's rights and in violation of the law. Such is the case here, in the posture in which it comes to this Court. The jury found that there was no default and thus found that the action of the Ford Finance Company was an action "committed in known violation of [Adams'] rights and in violation of the law." Appellant argues the case here as if the jury verdict had not already resolved the issue as to the existence of the default. We conclude that the jury was entitled under the unobjected-to charge of the court to consider the element of punitive damages.

■ As to the amount of the damages, $20,000, in light of the fact that the property values were in the range of approximately $1,500 to $2,000, appellant contends that under the Alabama law, there must be some mathematical relationship between the amount of actual damages and the amount awarded for punitive damages. This simply is not the law. In *Badgett v. McDonald*, 53 Ala.App. 726, 304 So.2d 228, (1974), the court said: "Punitive damages need bear no mathematical relationship to actual damages unless so great as to shock the judicial conscience. *See Pinckard v. Dunnavant*,

281 Ala. 533, 206 So.2d 340." In that case, the special damages were $47 and there was a general verdict for $7,500 referable to pain and suffering and punitive damages.

The basis for granting punitive damages in Alabama was stated as long ago as 1907 in the following terms: "Punitive or vindictive damages exceed the loss or injury actually sustained, 'and are given as a kind of punishment to the defendant with a view of preventing similar wrongs in the future.'" This basis for the granting of punitive damages has been recognized continually by the Alabama courts. *See Badgett v. McDonald, supra,* 304 So.2d at 229; *Trahan v. Cook,* 288 Ala. 704, 265 So.2d 125; *Kelite Products v. Benzol,* 224 F.2d 131, 144 (5th Cir. 1955).

While the defendant in the trial court may have been entitled to a fuller statement in the court's charge to the jury giving the basis for the imposition of punitive damages, as indicated in *Kelite, supra,* no such request was made, as no objection was made to any of the charges.

■ The standard of review of allegedly excessive damages whether punitive or compensatory, does not differ as between the Alabama rule and that followed by the federal courts. All courts are extremely reluctant to interfere with a jury verdict which may be based on such widely ranging bases as desire to punish a party for improper conduct and a desire to create a deterrence to similar conduct by others. Nevertheless, excessive verdicts are set aside. The right of a plaintiff to have this fact issue decided by a jury devolves from the Seventh Amendment to the Constitution and it is only in case the amount awarded by a jury appears to be so excessive as to be unconscionable and to arise from bias or prejudice that the appellate court considers it appropriate to intervene. In *Gorsalitz v. Olin Mathieson Chemical Corp.,* 429 F.2d 1033, this Court discussed the power of this Court to review a district court's rule on a motion for new trial based on the contention that the verdict was excessive. We there said:

"In a recent case of this kind, *Taylor v. Washington Terminal Company,* 1969, 133

U.S.App.D.C. 110, 409 F.2d 145, cert. den. 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85, Judge Skelly Wright has evolved a practical test of 'abuse of discretion.' We quote at some length, omitting footnotes:

'It is by now standard doctrine that such orders may be reviewed for abuse of discretion, even when based upon such broad grounds as the trial judge's conclusion that the verdict was excessive or was against the weight of the evidence. There has been much discussion of the content which should be given to the elusive phrase "abuse of discretion," with the weight of learning against appellate reversal except in relatively rare cases.

This learning has largely arisen from consideration of cases in which motions for new trial—especially on the ground of excessive verdict—have been *denied.* Two factors unite to favor very restricted review of such orders. The first of these is the deference due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record. The second factor is the deference properly given to the jury's determination of such matters of fact as the weight of the evidence and the quantum of damages. This second factor is further weighted by the constitutional allocation to the jury of questions of fact.

Where the jury finds a particular quantum of damages and the trial judge refuses to disturb its finding on the motion for a new trial, the two factors press in the same direction, and an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial. . . .'" [Emphasis in original].

429 F.2d at 1045

■ Such is the case here. Both the jury and the trial judge acted in concert with respect to the verdict of $20,000 and although it is quite apparent that other judges might well conclude that a much less substantial sum would be adequate punishment for the conduct of the defendant in this case and as a deterrent against its

repetition, we are simply unable to say that this falls into the very exceptional class of cases in which we can determine that the trial court abused its discretion in not granting a new trial on the issue of damages in light of the accepted charge of the trial court to the jury dealing with this phase of the case.

The judgment is AFFIRMED.