William L. STARKENSTEIN, Plaintiff,

v.

MERRILL LYNCH PIERCE FENNER &
SMITH INC., Robert A. Clair and
Ralph Dudley, Defendants.

No. 81–298–Orl–Civ–R.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 5, 1983.

As Amended Oct. 13, 1983.

Robert Dyer, of Duckworth, Allen, Dyer & Pettis, Orlando, Fla., for plaintiff.

David Hanlon, and David T. Knight, of Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for defendant Merrill Lynch.

Roger Vaughan, of Wagner, Cunningham, Vaughan & McLaughlin, Tampa, Fla., for defendant Robert A. Clair.

William T. Keen, Tampa, Fla., for defendant Ralph Dudley.

## MEMORANDUM OF DECISION

JOHN A. REED, Jr., District Judge.

### Introduction

Three claims were submitted to the jury. The first claim was the plaintiff's 10b–5 claim based on alleged churning. The second and third claims respectively were pendent claims based on allegations of a ·breach of fiduciary duty and common law negligence. The defense of estoppel was submitted to the jury only as a defense to the second claim. The jury found against the plaintiff on the first claim and for the defendants on the estoppel defense to the second claim. On the basis of the jury verdict, a judgment was entered for the defendants Merrill Lynch and Clair on claims 1 and 2. The jury found for the plaintiff on his third claim and assessed plaintiff's contributing negligence at thirty percent. The jury also found for the plaintiff on the issue of punitive damages. Accordingly, a judgment was entered for the plaintiff on the third claim. In calculating the judgment, the court reduced the compensatory damage award found by the jury by thirty percent in accordance with the jury's assessment of contributing negligence.

### Discussion of Post Trial Motions

By a ·motion filed on 1 August 1983, the defendants Merrill Lynch and Clair moved for a judgment notwithstanding the verdict on various grounds. The first ground is that because the jury found for the defendants on the estoppel defense, the plaintiff is entitled to no recovery under the negligence claim. There are two fallacies to this position. The first is that the defense of estoppel was never asserted by the defendants as a defense to the common law negligence claim. See, Pre-trial Stipulation ¶ 9(d). The second is that estoppel under Florida law would not be considered an absolute bar to recovery where the conduct of the plaintiff which creates the estoppel also constitutes contributing negligence. In other words, defendants' theory is inconsistent with Florida's comparative negligence principles. The Florida Supreme Court has

recently held that the defense of assumption of risk as an absolute defense is inconsistent with Florida's comparative negligence principles and, in all but a narrow situation, has been subsumed under the classification of contributing negligence. *See, Blackburn v. Dorta,* 348 So.2d 287 (Fla. 1977); *cf. Kuehner v. Henry Michael Green, et al.,* 436 So.2d 78 (Fla.1983).

■ Next the defendants contend that the plaintiff failed to adduce evidence against Merrill Lynch supporting the claim for punitive damages. The defendant argues that there was no evidence which would justify a finding that Clair or Dudley acted in a malicious or reckless manner. The short answer to this is that Clair himself admitted to using bad judgment in failing to stop plaintiff's trading at an earlier point than he did, and Dudley testified that Clair used bad judgment in allowing the plaintiff to continue trading on margin after Dudley had specifically instructed Clair to terminate margin trading for plaintiff. Given the knowledge that the defendant Clair had with respect to the plaintiff's earning and intellectual capacity, his age, and his financial status, the jury could well have found Clair's conduct reckless. With regard to the liability of Merrill Lynch for punitive damages, that defendant also argues that there was no evidence of its fault, independent of the fault of Clair; therefore, under Florida law the corporate defendant could not be vicariously liable. *See, Mercury Motors Express, Inc. v. Smith,* 393 So.2d 545 (Fla.1981). The evidence—particularly the testimony of John Pellegrino—indicated that Merrill Lynch had established rules to avoid investor trading in securities not suitable for the particular individual. The jury, however, could have inferred from all of the evidence in the case that Merrill Lynch was at fault in failing to establish a system that assured its account executives and office managers would genuinely apply the company's own suitability rules.

■ The next claim of the defendants is that the plaintiff waived his right to punitive damages against the defendants by ex-

ecuting an option agreement with Merrill Lynch which provided that all disputes were to be arbitrated in accordance with the laws of New York. The "option agreement" is in evidence as defendants' Exhibit 9. The theory of the defendants is that under New York law punitive damages may be allowed only in a judicial proceeding. Therefore, because the plaintiff agreed to arbitration under New York law, he in effect waived his claim to punitive damages.

There are three reasons why this argument cannot be accepted. The first is that the pendent claims were inseparable from the 10b–5 claim and, therefore, could not have been subject to arbitration prior to the trial of the 10b–5 claim. If they were not subject to arbitration prior to the trial of the 10b–5 claims, it would appear to violate the principles of res judicata to enforce the agreement subsequent to the trial at which the claims were presented and adjudicated without any objection on the basis of pending or impending arbitration. *See, Miley v. Oppenheimer & Co. Inc.,* 637 F.2d 318, 334 (5th Cir.1981). The record reveals no effort by the defendants to submit the pendent claims to arbitration and stay the litigation pursuant to 9 U.S.C. §§ 3 and 4.

■ Secondly, in determining the law which governs the pendent claims, this court must look as it would in a diversity case to the conflicts law of Florida for guidance. (*See, First Southern Fed. Sav. v. First Southern Sav.,* 614 F.2d 71, 73 (5th Cir.1980). Under Florida conflicts law, matters bearing upon the execution, validity, *interpretation and obligations of contracts* are determined by the laws of the place where the contract is made—in this case, presumably Florida. Matters connected with performance are regulated by the law of the place where the contract is to be performed. *See, Charles L. Bowman & Company v. Erwin,* 468 F.2d 1293, 1295 (5th Cir.1972). Accordingly, in determining whether or not the contract effected a waiver of a right, the court would look to the law of the State of Florida. Under Florida law, a waiver is an intentional relinquishment of a known right. *See, Wilds v. Permenter,* 228 So.2d 408, 410 (Fla. 4th

D.C.A. 1969); *Fireman's Fund Ins. Co. v. Vogel*, 195 So.2d 20, 24 (Fla. 2d D.C.A. 1967). There is, however, no evidence here to suggest that by executing defendants' Exhibit 9, the plaintiff knowingly intended to relinquish a prospective claim for punitive damages consequent on churning. Consideration has been given to *Baselski v. Paine Webber Jackson & Curtis*, 514 F.Supp. 535 (N.D.Ill.1981). This court concludes that Florida law would be otherwise.

Finally, the arbitration agreement was not executed by Merrill Lynch. Consequently, the contract apparently lacked mutuality and is, therefore, unenforceable. *See, Goff v. Indian Lake Estates, Inc.*, 178 So.2d 910 (Fla. 2d D.C.A. 1965), and *Fincher v. Belk-Sawyer Company*, 127 So.2d 130 (Fla. 3d D.C.A. 1961).

The next ground for the motion is in actuality an alternative motion for a remittitur of the punitive damages assessed against Merrill Lynch in accordance with what the defendants refer to as the "Miley" rule limiting punitive damages to three times the excess commissions. The defendants claim federal courts are not *Erie* bound to follow state law principles in resolving a claim that punitive damages are excessive. Federal courts, say the defendants, have a discrete interest in guarding against an abuse of their process and, therefore, have inherent power to develop a federal "common law" by which to resolve claims of excessiveness in damage awards.

The defendants' position is particularly appealing as it relates to punitive damages which are an absolute anomaly in the law. If such awards are to punish a defendant and to deter similar acts in the future, one must wonder why the award should go to the victim. By definition he is made whole by compensatory damages. Why should the award not be taken into the public treasury and used for the public good. Because the award is punitive, why should not its basis be proved beyond reasonable doubt. The multitude of problems created by the ever-growing claims for punitive damages are ripe for legislative consideration. In the meantime, this court is bound—one might say *Bonner*[1] bound—by *Miley*. A careful reading of *Miley*, however, indicates that the panel did not enunciate a principle of federal common law limiting punitive damages to three times the excessive commissions. Rather its decision was an application of the law of Texas relating to excessiveness in punitive damage awards. The Court said:

> Despite the lack of guidance provided by the cited Texas caselaw, we are by no means forced to apply the four-part Texas test for assessing the fairness of punitive damage awards to churning cases in a vacuum.

*Miley, supra*, at 331.

Thereafter, it concluded:

> Therefore, we feel, under the law of Texas, that an award of punitive damages which is roughly three times as great as the unjust commissions 'earned' by a broker in a churning-breach of fiduciary duty case is not excessive.

*Miley, supra*, at 332.

Following the lead of *Miley*, it would seem that this court should resolve the excessiveness claim by reference to Florida law. *See also Quality Foods, Inc. v. U.S. Fire Ins. Co.* (11th Cir.), 715 F.2d note 2. On the other hand, if *Warren v. Ford Motor Credit Co.*, 693 F.2d 1373 (11th Cir.1982) established a federal standard, the *Warren* standard is indistinguishable from that followed in Florida courts. In *Warren* the Eleventh Circuit stated:

> The Alabama Supreme Court has stated that 'punitive damages are discretionary with the jury, depending on the enormity of the wrong and the necessity of preventing similar wrongs.' *Winn-Dixie Montgomery, Inc. v. Henderson*, 395 So.2d 475, 477 (Ala.1981). The standard of review of allegedly excessive damages, whether punitive or compensatory, does not differ as between the Alabama rule *and that followed by the federal courts* . . . .

*Warren, supra*, at 1379 (emphasis added).

Under Florida law a proportional relationship between compensatory and pu-

---

1. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir.1981).

nitive damage awards is not required. *Lassitter v. International Union of Operating Engineers,* 349 So.2d 622 (Fla.1977). Punitive damages, however, should be proportional to the magnitude of the wrong. *St. Regis Paper Co. v. Watson,* 428 So.2d 243, 247 (Fla.1983). Courts may hold punitive damages excessive only in unusual circumstances. *Wackenhut Corp. v. Canty,* 359 So.2d 430 (Fla.1978).

Without belaboring the evidence, the jury in the present case could have believed that the account trading was excessive and caused a serious loss in the value of the plaintiff's estate. The jury could have found that unsuitable investments were recklessly encouraged by defendant Clair. The strategy of buying on margin could likewise have been found by the jury to have been encouraged by Clair and to have been equally reckless. And the jury could have viewed as reckless the failure of the defendants to put an end to the plaintiff's losses at an earlier time in the trading period. In short, given the possible findings of the jury, this court cannot conclude that the award was disproportionate to the magnitude of the wrong.

Finally, the defendants contend that the court erred in allowing the jury to consider the total net worth of the defendant Merrill Lynch as opposed to the net worth of its Daytona Beach office. This argument basically relates to the relevance of the evidence concerning Merrill Lynch's total net worth. The court in allowing such evidence considered that the total net worth was relevant to the amount required to establish an award of punitive damages that would punish and deter.

For the foregoing reasons, the motion for judgment notwithstanding the verdict etc. filed on 1 August 1983 by the defendants will be denied.

On 4 August 1983, the plaintiff filed a motion to amend the judgment to allow the entire amount of the compensatory damages to stand. The plaintiff's argument seems to be that the jury's finding of punitive damages is tantamount to a finding of an intentional tort and, as against such a claim, contributing negligence should not be a defense, even pro tanto.

The plaintiff suggests that there is no Florida law on the subject. In Florida law, however, the doctrine of avoidable consequences is thoroughly engrained. *See, Jenkins v. Graham,* 237 So.2d 330 (Fla. 4th D.C.A. 1970). That being the case, it is unlikely that a Florida court would hold that the plaintiff could recover, even in the context of an intentional tort, for damage caused by his own failure to use due care. There are further reasons why the plaintiff's position should not be accepted. The plaintiff never sought to present an intentional tort theory to the jury through pleadings and instructions designed to elicit a finding of intentional wrongdoing. Finally, it does not follow, as the plaintiff argued, that the jury's finding on the punitive damage claim warrants a conclusion as a matter of law that the jury found an intentional wrong. On the contrary, the evidence did not indicate an intent on the defendants' part to injure the plaintiff or actual malice. For those reasons, the plaintiff's motions for judgment notwithstanding the verdict and to alter or amend the judgment will be denied.