Defendants, Chrysler Credit Corporation ("Chrysler") and Langford Investigators, Inc. ("AAA"), appeal a judgment based on a jury verdict in favor of the plaintiff, Herman C. Turner. We affirm.
The issues are (1) whether the trial court erred in not granting the defendants' motions for a directed verdict, a judgment notwithstanding the verdict, or a new trial, and (2) whether the verdict of the jury was supported by the evidence.
Herman C. Turner purchased a new 1983 Dodge 600 automobile from a Dodge dealership in New Orleans, Louisiana, and executed a contract, a promissory note, and a chattel mortgage, which were subsequently assigned to Chrysler. The salesman explained the contract to Turner at the time the sale documents were executed. Turner was told that his car could be repossessed if he failed to make the monthly payments to Chrysler on time and that late charges would be applied to late payments. Turner's payments began in February 1983.
Turner made several late payments and asked for extensions for making payment. Chris Shelley, a Chrysler representative, contacted Turner on several occasions regarding his past due account. On several of those occasions, Turner told him that he had withheld payment because the car was in the shop for repairs. Turner and his wife had been involved in an earlier lawsuit with Chrysler concerning certain mechanical problems they had experienced with the car, and they occasionally withheld payments until the car was satisfactorily repaired. Chrysler said Turner was in arrears in excess of a full payment around the first of October 1984. Turner's wife allegedly made a full payment to Chrysler in the amount of $317.20 around the end of September or early October 1984. However, Turner could not produce any documentation proving that the payment was made, nor did Chrysler have a record of having received the payment. Mrs. Turner said she talked to Shelley on October 12, 1984, and that he advised her that it would take $225 to bring the account current.
On Friday, October 12, 1984 (before the $225 payment was received), Chrysler asked AAA to repossess Turner's car for nonpayment. Joe Ed Hayes, an agent for AAA, went to Turner's home around midnight on October 14, 1984. Hayes backed his tow truck up to the rear of Turner's car, which was parked in the driveway (with the rear of the car toward the street.) Hayes got out of his truck to check the vehicle identification number of the car, returned to his truck, and proceeded to hook the towing arm to the rear of Turner's car. Turner and his wife were awakened by the noise outside their bedroom and observed Hayes towing the car away. Turner said he became angry, thinking that someone had stolen his car. Turner grabbed his shotgun, and his wife had to physically restrain him from going outside to confront Hayes.
Hayes towed the car about one block and then rehooked the towing arm to the front of the car. On the way to the repossession lot, Hayes stopped and telephoned the police and notified them that he had repossessed the car.
Chrysler received the $225 payment on October 15, 1984. After receiving the payment, Chrysler attempted to return the car to Turner. Turner refused to accept the car, saying it had been damaged during repossession.
In 1986, Turner sued Chrysler and AAA for conversion, wrongful repossession (alleging that defendants breached the peace in obtaining possession of the vehicle), trespass, outrageous conduct, and intentional infliction of emotional distress. There was confusing and conflicting evidence at trial regarding the issue of whether Turner was in default. Chrysler claimed that Turner was still in arrears after the $225 was credited to his account, and, therefore, that it was entitled to repossess the car pursuant to the contract. Turner could not prove conclusively that the $317.20 payment was made at the end of September or early October 1984. However, a Chrysler representative (Chris Shelley) testified that Chrysler did not ordinarily *Page 66 
return a car that it had repossessed unless the payments were current.
Hayes testified that he never saw Turner and did not speak or gesture to him on the night he towed Turner's car. Turner testified that he was "intimidated" by the "noise and racket" outside his house and was "very angry" that his car was being "stolen." The trial court directed a verdict in favor of the defendants on the claim of outrageous conduct and the claim of intentional infliction of emotional distress and submitted the case to the jury on the conversion, wrongful repossession, and trespass claims. The jury returned a general verdict in favor of Turner in the amount of $25,000. The defendants appealed.
Chrysler and AAA argue that there was a complete absence of proof of conversion that would permit the issue to be submitted to the jury and that the trial court should have entered a judgment notwithstanding the verdict. Alternatively, they argue that they are entitled to a new trial or to a remittitur. We do not agree.
Initially, we note that this Court has held:
 "[The] standard of review for testing motions for directed verdict is identical to that for testing motions [for judgment notwithstanding the verdict], and that the jury must be allowed to pass on the evidence if there is any evidence, no matter how slight, to support a verdict in favor of the party against whom a directed verdict is sought. . . . Similarly, a motion for [judgment notwithstanding the verdict] should be denied if there is any conflict in the evidence for the jury to resolve, the existence of such conflict to be determined by the scintilla rule. . . . Both motions . . . may be denied if there is a scintilla of evidence favorable to the non-movant."
Stauffer Chemical Co. v. Buckalew, 456 So.2d 778, 782-83 (Ala. 1984) (citations omitted).
 "[T]he denial of a motion for a new trial rests within the sound discretion of the trial court. This court will not disturb the trial court's ruling unless the record plainly shows the trial court to be in error in its action on such a motion. . . . Furthermore, jury verdicts are presumed correct and that presumption is strengthened when the trial court denies a motion for new trial."
Smith v. Blankenship, 440 So.2d 1063, 1066 (Ala. 1983) (citations omitted).
In an analogous case, Ford Motor Credit Co. v. Jackson,347 So.2d 992 (Ala.Civ.App. 1977), the plaintiff sued Ford for conversion after his car was repossessed. In that case, the plaintiff claimed that he had made payment, although he could not conclusively prove that the payment was made. Ford claimed that its records reflected that the payment was not made. The Court of Civil Appeals wrote:
 "[A] motion [for judgment notwithstanding the verdict] should not be granted if there is any conflict in the evidence for the jury to resolve. Moreover, the existence of such evidence is to be determined by the scintilla rule. . . .
". . . .
 "In this instance, there are no objective facts which conclusively establish the occurrence or nonoccurrence of the events in question. . . .
". . . .
 ". . . [W]e have testimony which neither can be disproven through application of objective facts nor which is so inherently improbable or unreasonable as to be without probative value as a matter of law. [The plaintiff] merely testified that he had made the automobile payments in question. Although his testimony on direct and cross-examination was contradictory, such contradictions do not in this instance make the testimony unbelievable as a matter of law so as to require reversal by this court. The question of which part of [the plaintiff's] testimony was believable was for the jury."
Jackson, 347 So.2d at 994-95 (citations omitted).
This Court has said that "[p]roper submission of a conversion count to a jury requires a plaintiff to produce evidence from which reasonable jurors could infer 'a wrongful taking or a wrongful detention or interference, or an illegal assumption of *Page 67 
ownership, or an illegal use or misuse' of plaintiff's property or rights in property." Empiregas, Inc., of Gadsden v. Geary,431 So.2d 1258, 1260 (Ala. 1983) (quoting Ott v. Fox,362 So.2d 836, 839 (Ala. 1978)). In this case, Turner produced evidence from which the jury could infer that Chrysler and AAA had wrongfully taken his car by repossessing it although his payments were current. From Shelley's testimony that Chrysler ordinarily would not return someone's car unless the payments were current, and from the fact that there was no conclusive proof whether payment had, in fact, been made, the jury could infer a wrongful taking, detention, or interference with Turner's ownership. Therefore, the issue of conversion was properly submitted to the jury, and the trial court did not err in denying the defendants' motions for directed verdict, judgment notwithstanding the verdict, and new trial.
The jury returned a general verdict for Turner in the amount of $25,000. As to his compensatory damages, Turner testified that his car was worth $10,000, although he had paid $11,180 for it when it was new and had driven it 59,000 miles in only 18 months. Therefore, the jury could have found and awarded $10,000 in compensatory damages. The question is whether the evidence justifies an award of an additional $15,000 in punitive damages.
 " 'It is clear [that] punitive damages may be awarded in an action for conversion, even though not alleged in the complaint, where the evidence justifies such [an] award. . . . Such punitive damages are justified when the evidence discloses the conversion to have been committed in known violation of law and of [the] owner's rights, with circumstances of insult, or contumely, or malice. In the presence of such evidence, punitive damages are for the discretion of the jury.' "
Roberson v. Ammons, 477 So.2d 957, 960-61 (Ala. 1985) (citations omitted) (quoting Carolina Casualty Ins. Co. v.Tisdale, 46 Ala. App. 50, 57, 237 So.2d 855, 859-60, cert.denied, 286 Ala. 741, 237 So.2d 861 (1970)). "The conversion committed in known violation of the law and of plaintiffs' rights is itself legal insult, contumely, or malice sufficient to justify an award of punitive damages." Roberson, supra, at 961; see also Ray Hughes Chevrolet, Inc. v. Gordon, 294 Ala. 638, 320 So.2d 652 (1975). "The award of punitive damages is within the sound discretion of the jury, considering all attendant circumstances. . . . The jury's award is to punish the wrongdoer based upon the enormity of the wrong to the plaintiff, as well as the necessity to prevent similar wrongs from being committed in the future." Roberson, at 961. Further, this Court has written, " 'Punitive damages need bear no particular relationship to actual damages; whether they are excessive depends upon whether or not the judicial conscience is shocked. . . . Unless they are so excessive as to indicate prejudice or passion their award will not be reversed.' "Roberson, supra, at 961 (affirming a judgment based on a jury verdict awarding $100,000 in punitive damages in a conversion action) (citation omitted) (quoting Pinckard v. Dunnavant,281 Ala. 533, 206 So.2d 340 (1968)). In this case, the jury could have found that the defendants breached the peace and were in violation of Code 1975, § 7-9-503. See General Finance Corp. v.Smith, 505 So.2d 1045 (Ala. 1987). The jury's award of $15,000 in punitive damages in this case does not shock the judicial conscience or indicate prejudice or passion.
Therefore, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES and SHORES, JJ., concur.
HOUSTON, J., concurs in the result. *Page 68