163 So.2d 213

**Johnny FOSTER et al.**

**v.**

**Kenneth Aubrey FLOYD.**

**4 Div. 132.**

Supreme Court of Alabama.

April 9, 1964.

Quinton Bowers, Birmingham, John W. Gibson, Troy, Albert W. Copeland and Godbold, Hobbs & Copeland, Montgomery, for appellants.

John C. Walters and Oliver Brantley, Troy, for appellee.

LIVINGSTON, Chief Justice.

This is a suit for personal injuries allegedly suffered by the plaintiff-appellee, Kenneth Aubrey Floyd, as a result of an automobile accident in Pike County, Alabama. Appellee instituted this suit in the circuit court of that county. His complaint consisted of two counts, a negligence count, and a count based on wanton misconduct.

We are here concerned with the latter count, to which the judgment is referable. It alleged, in part, that the "defendants wantonly injured the plaintiff by wantonly running an automobile into an automobile which the plaintiff was driving."

There is no contention that the trial court erred in submitting the case to the jury or that the verdict was contrary to the evidence; therefore, we do not deem it necessary to set out the facts of the case in detail. At the time of the accident in question, the appellants were in an automobile belonging to the defendant, Johnny Foster. Appellee Floyd was driving his own car, and the two collided. There was some controversy over which of the appellants was actually driving the Foster car. At the time of the accident apparently Johnny Foster said that he was the driver; at the trial below, however, the evidence tended to show that Johnny Roy Foster, the son of Johnny Foster, was the driver, and the jury must have so found because it returned a verdict against both defendants in the amount of $3,500.

The appellants' assignments of error fairly raise the following questions:

1. Can the wanton conduct of the driver of an automobile be imputed to the owner on the same principles as the imputation of negligence?

2. Can a charge of wantonness against one defendant be properly joined in the same count with a charge of imputed wantonness against another defendant?

3. Was the verdict of $3,500 excessive?

There are several ways of approaching the first problem, all of which lead to the affirmance of the judgment of the court below. Perhaps the easiest of these is to begin by determining exactly what the doctrine of imputed negligence (and by corollary imputed wantonness) is; that is, whether it is a form of vicarious liability in and of itself, or simply a method of establishing an agency relationship. In various jurisdictions, it seems to have been treated both ways. The Alabama cases, however, treat it primarily as a shorthand method of finding agency. In the case of Woodson v. Hare, 244 Ala. 301, 13 So.2d

172, this Court was faced with a case of imputed negligence. In that case, we stated:

"Appellant's liability in this case is not based upon the strict doctrine of master and servant, or principal and agent, but upon the doctrine of imputed negligence which arises from the presence of the permissive user, the appellant, in the automobile at the time of the collision, which, although it was not being driven by her servant, was being driven with her permission and in her business, or in a joint enterprise of such permissive user and the driver.

"Where a permissive user of an automobile occupies the car at the time of the collision, she is liable for the negligence of the driver if (1) she has not abandoned her right to control the car, or (2) if she exercises or has a right to exercise any control over the driver or the operation of the car, or (3) if the ride is for her benefit or for the mutual benefit of herself and the driver. This rule is set forth in Blashfield's Cyclopedia of Automobile Law and Practice, 1935, Permanent Edition, vol. 5, pages 66 to 70, § 2930, as follows:

" 'By the weight of authority, the owner of a motor vehicle, present therein at the time of an accident caused by its negligent operation, is liable for injuries resulting though he is not personally at the wheel; the car being driven by one not his servant, but with his permission and in the business of the owner or in a joint enterprise of the owner and the driver.

" 'Where an owner is riding in an automobile which is being driven by another in an improper manner, and the evidence does not show a contractual surrender nor an abandonment of the owner's right to control, the inference is warranted that the owner knew of and permitted the improper operation and he is deemed to have consented to

the negligent operation of the machine and the driver's negligence is imputed to him; and if an owner permits some other person to operate his car in which he is riding, whether his wife, child or a friend, retaining such control of the car as gives him unrestricted right of direction and control, he will be liable for the driver's negligence.'

\*　　\*　　\*　　\*　　\*　　\*

"As we have indicated, the minor present in the car may be held liable for the negligence of the driver whom she has appointed, upon the doctrine of imputed negligence. In such case, the driver is the alter ego of the minor: Clearly, an agent in law. Thomas v. Carter, 218 Ala. 55, 117 So. 634." See also Downes v. Norrell, 261 Ala. 430, 74 So.2d 593.

■　Speaking now as to whether or not wantonness can be imputed in the same manner as negligence is imputed, we hold that it can be.

■　While it was once generally held that an agent exceeded his authority in committing a wanton act, it is now generally held that wantonness does not in and of itself remove a particular act from the agent's scope of authority. 3 C.J.S. Agency § 258. See also 16 Ala.Digest, Principal & Agent, ☞159(1), and cases therein cited.

■　In our recent case of Aggregate Limestone Co. v. Robison et ux., ante p. 338, 161 So.2d 820, we considered the questions here presented, and there said:

"We now move to a consideration of appellants' 28th assignment of error, to the effect that the refusal of the lower court to give the affirmative charge with hypothesis as to Count Four of the complaint was error to reverse. Nowhere in Count Four is it alleged that any party or individual other than the two corporate defendants committed the alleged wanton blasting. The averments all charge that the 'defendants' did the acts complained of by

plaintiffs. Appellants state in brief that their attention is at once 'fixed' on the provisions of § 217(1), Tit. 7, Code of Ala.1940, as amended (§ 1 of Act 624, General Acts of 1957) by a reading of Count Four. It would seem from certain side bar comments, that the bench and bar of our state have been in a state of confusion regarding the construction, application and constitutionality of this act, and due to the probability of another trial, we think it expedient to comment on the act.

"Section 217(1), Tit. 7, Code of Ala. 1940, as amended, provides as follows:

" 'Proof that act was committed by agent, etc., sustains allegation that act was committed by party.—In any civil action it shall be permissible to allege in any pleading that any party or parties committed an act, and proof that any such party or parties committed such act by or through an agent, servant or employee acting within the line and scope of his employment shall be sufficient proof of such allegation, subject, however, to the right of the party or parties against whom such testimony is offered to thereupon plead the statute of limitations which might have been applicable to the case made by the evidence offered.'

"Appellants make the same arguments here with respect to § 217(1) that were advanced in Louisville & Nashville R. Co. v. Johns, 267 Ala. 261, 101 So.2d 265, 74 A.L.R.2d 499, and accepted by the Court in declaring unconstitutional Act No. 670, Gen.Acts of 1947 (§ 138 [1], Tit. 7 of the Code, as amended).

"Said Act 670 was also considered in Sibley v. Odum, 257 Ala. 292, 58 So.2d 896, wherein on the first rehearing this Court considered the constitutionality of Act 670 and declared it unconstitutional for the reasons stated in the rehearing opinion. However, on further rehearing, this opinion was withdrawn

and the act 'was laid entirely out of view' since it was there determined that a consideration of the constitutionality, vel non, of the act was unnecessary to a decision since the act was not brought in to trial and not relied upon or mentioned on appeal by either party. However, the onset of the action in the Johns case occurred June 12, 1950 (see Louisville & Nashville R. Co. v. Johns, 258 Ala. 440, 63 So.2d 570).

"The author of the instant opinion was also the author of the opinions in the Sibley v. Odum case, including the opinion which demonstrated that Act 670 was unconstitutional and which opinion was relied upon in the Johns case (267 Ala. 261, 101 So.2d 265) declaring the act unconstitutional. The Court is well advised with respect to said act and that § 217(1), Tit. 7, Code 1940, as amended (Act No. 624, Gen. Acts 1957, p. 895) was an effort on the part of the legislature to remedy the obliquities immanent in Act No. 670 pointed out in Sibley v. Odum. We think that the later act did just that. The objections to Act 670, we think, were entirely eliminated by the new wording and substance of said § 217(1). This is particularly demonstrated by the last proviso of § 217(1) which we repeat here for emphasis:

" * * * subject, however, to the right of the party or parties against whom such testimony is offered to thereupon plead the statute of limitations which might have been applicable to the case made by the evidence offered.'

The first act (No. 670) made no reference to the statute of limitations which we believe was the main objection to it, and that which rendered it 'impossible of execution' and therefore 'inoperative and without effect'.

"The Court is also well advised that distinguished lawyers have strenuously inveighed against the constitutionality of § 217(1) but we are constrained to

the view that such criticisms are without merit. But we also hold to the view that we should not indulge in too much elaboration to answer these various arguments. Suffice it to say, after careful study, that in our opinion the act is constitutional and such cases as Ex parte Foshee, 246 Ala. 604, 21 So.2d [821] 827, holding that the legislature cannot validly pass a law which will impede the functioning of the Court are inapposite. Certainly it cannot be gainsaid that the legislature has the power to prescribe rules of pleading and practice and evidence.—Johns case, supra (267 Ala. 261, 101 So.2d 265). And in our view the passage of § 217(1) is well subsumed under that power.

"In the case at bar, even though Count Four charged corporate participation in the alleged wanton act or omission, etc., by the two defendants and even though there was no such evidence, such proof was not necessary to sustain the count in view of said § 217(1), providing: ' * * * proof that any such party or parties committed such act by or through an agent, servant or employee acting within the line and scope of his employment shall be sufficient proof of such allegation * * *.' The plain meaning of this is that where proof that an agent committed an intentional, wanton, or negligent act while in the line and scope of his employment, liability for such act would be imputed to the principal, regardless of the actual participation of the principal in the intentional, wanton or negligent act or omission under the doctrine of respondeat superior. This act, of course, sets up a new statutory form of action.

"It may be well to advert to § 176(1) et seq., Tit. 7, Code of Ala., as amended (§§ 1 to 6, inclusive, Act No. 544, Gen.Acts 1957). Section 176(4) provides:

" 'Against whom recovery may be had.—In all such actions recovery may be had against the agent, servant or employee although no recovery is had against the principal or master, but there shall be no recovery against the principal or master unless there is a recovery against the agent, servant or employee.'

The reason behind the statute seems manifest since there could be no imputation of negligence or intentional or wanton acts, or omissions without such acts being perpetrated by the actor—the agent, servant, or employee of the master acting within the line and scope of employment.—See Atlantic Coast Line Railroad v. Kines, ante p. 253, 160 So. 2d 869, for a discussion of this statute.

"We think the excrescences with reference to the common law action discussed in City Delivery Co. v. Henry, 139 Ala. 161, 34 So. 389, and later cases, should have been long ago removed and that they have been by said § 217 (1)."

As to the third question posed—excessiveness of the damages: We appreciate the candor with which counsel for the appellants has approached the question of excessiveness of damages. It is, as the appellants point out, simply a question of whether or not the judicial conscience is quickened by the verdict. We feel that in this respect the decision of the court below must be allowed to stand. As we stated previously, the judgment is referrable to the wanton count and under such a count, of course, punitive damages may be assessed. Punitive damages need bear no particular mathematical relationship to actual damages. Bell v. Preferred Life Assur. Society of Montgomery, Ala., 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15. We do not find the verdict excessive.

We find no error in the record, and the case is due to be, and is, affirmed.

Affirmed.

SIMPSON, MERRILL and HARWOOD, JJ., concur.