514 So.2d 804 (1987)
DEPENDABLE INSURANCE COMPANY
v.
Elsie Marie Wade KIRKPATRICK.
85-1150.
Supreme Court of Alabama.
May 1, 1987.
Rehearing Denied May 29, 1987.
On Return to Remand June 26, 1987.
Rehearing Denied September 18, 1987.
*805 Arthur F. Fite III, Anniston, for appellant.
Stephen D. Heninger of Hare, Wynn, Newell & Newton, Birmingham, and Frank C. Ellis, Jr., of Wallace, Ellis, Head & Fowler, Columbiana, for appellee.
SHORES, Justice.
Plaintiff, Dependable Insurance Company, filed a declaratory judgment action seeking to determine the rights of defendant, Elsie M. Kirkpatrick, to use a cabin on Lay Lake. Defendant filed a counterclaim for conversion, and plaintiff appeals from a judgment in favor of defendant. We affirm conditionally as to that portion of the judgment awarding compensatory damages and remand with instructions as to the portion awarding punitive damages.
Elsie M. Kirkpatrick was married to G.T. Kirkpatrick in 1947. In 1968 G.T. entered into a 15-year agreement with Alabama Power Company (hereinafter "APCo") for a lot on Lay Lake in Shelby County. There was a provision for a 15-year extension at the end of the primary term. The agreement required G.T. to complete the construction of a dwelling within two years, and the dwelling was completed in 1970.
In 1973, Elsie and G.T. were divorced. The divorce decree stated, in pertinent part:
"The Lay Lake Cabin leased by the defendant [G.T.] shall remain the defendant's property but plaintiff [Elsie] shall have the right to use same on the first and third weekends of each month and for four weeks during the summer each year beginning with the first full week in July of 1974 and thereafter; it is agreed by the parties that each will be responsible for their respective cleaning and maintenance of the cabin during the use of the cabin. Plaintiff shall have exclusive use of the cabin during the dates and times set out above and the defendant shall not infringe in any way upon this right to use the cabin."
Elsie used the cabin frequently, had personal items there, and owned all the appliances and furniture in the cabin.
In 1982, Dependable obtained a judgment in the United States District Court against G.T. for $57,461.60. Pursuant to the judgment, G.T.'s interest in the property was sold by a United States marshal at a public sale and Dependable was the purchaser at the sale for $2500.00. By virtue of this sale, Dependable acquired all of the interest of G.T. in and to said cabin and his leasehold interest in the premises.
Prior to the judicial sale, attorneys for the parties entered into settlement negotiations. Tom Crawford, Dependable's attorney, offered to settle for $15,000.00 plus an assignment of the lease on Lay Lake. Richard Bell, G.T.'s attorney, rejected the lease offer and made a counteroffer of cash only. Bell stated that the offer was being made by his client's family and informed Crawford that Elsie would litigate any attempt to dispose of the leasehold interest in the property.
There is no indication that G.T. or Elsie received any notice of the sale; nor were they informed that they might have the right to redeem the property after the judicial sale.
Crawford testified that he advised Dependable's agent, Dan Love, as to when he could enter the cabin. Crawford advised Love to wait until the sale had been confirmed and that thereafter he could dispose of some personal items if it appeared that the items were not being used. Also, he told Love to retain personal items that appeared usable and to find the owners.
Dan Love and Bobby Doggrell first visited the cabin after confirmation of the sale and on this occasion changed the locks on the cabin. On their second visit, a few days later, certain items of personal property were removed from the cabin and taken to the landfill. Although some of the *806 items removed were ladies' clothing, Love testified that he did not know that there was anything in the cabin which belonged to anyone other than G.T.
The declaratory judgment held that Dependable succeeded to all the rights of G.T. in the property except and subject to the right of Elsie to use the cabin in accordance with the provisions of the divorce decree. The jury returned a verdict in favor of Elsie on her counterclaim, awarding $2380.00 as compensatory damages and $150,000.00 as punitive damages.
Dependable first argues that the trial court incorrectly concluded that Elsie had the right to continue using the Lay Lake cabin in accordance with the terms of the divorce decree, notwithstanding the purchase by Dependable at the U.S. marshal's sale. The trial court correctly ruled that the purchaser at an execution sale acquires only such interest as the defendant in the execution had. Barksdale v. Beasley, 260 Ala. 148, 69 So.2d 280 (1953). The title acquired at an execution sale relates back to the inception of the lien and takes priority over all transfers and incumbrances made subsequent to such inception. Barber v. Beckett, 251 Ala. 569, 39 So.2d 17, 19 (1949). The purchaser at an execution sale does not acquire interests created, prior to the inception of the lien, in persons other than the defendant in the execution. Therefore, since Dependable acquired the interest of G.T. and his interest was subject to the interest of Elsie, Dependable's interest in the Lay Lake cabin is subject to Elsie's previously created interest.
The appellant next asserts that the trial court erred in denying Dependable's motions for summary judgment, directed verdict, and JNOV or a new trial. Dependable contends that there was no evidence, or that there was insufficient evidence, of any malice or other circumstances on which to base Elsie's claim for punitive damages in the conversion action.
While Dependable does not question the right to recover punitive damages for a conversion, its main argument is that the requisite elements which would entitle Elsie to punitive damages are not present. Punitive damages are justified when the evidence discloses the conversion to have been willfully or fraudulently committed in known violation of law or an owner's rights with circumstances of insult, or contumely, or malice. Raley v. Royal Ins. Co., 441 So.2d 916 (Ala.Civ.App.1983). If the conversion is committed with the defendant knowing it is a violation of law and another's rights, then, as a matter of law, the conversion itself is legal insult, or contumely, or malice sufficient to justify an award of punitive damages. Roberson v. Ammons, 477 So.2d 957 (Ala.1985). In the presence of such evidence, punitive damages are within the sound discretion of the jury. Roberson, supra; Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358 (1955); Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961).
Dependable readily admits that there was evidence presented by which the jury could conclude that a conversion occurred. Additionally, from our reading of the record, we find sufficient evidence to support a finding that the conversion was committed in known violation of the law, as well as in violation of Elsie's rights.
Dependable's attorney had notice of the divorce and of the fact that Elsie planned to litigate to protect her interest in the property. Also, Dependable's argument is inconsistent when it argues that the converted property was abandoned, and yet seeks the court's aid in terminating Elsie's continued use of the property. By taking it upon itself to determine the property rights of another and acting upon its own decision, prior to a court's determination of the property rights, Dependable knowingly violated the rights of another; such a violation is sufficient to justify punitive damages. Roberson, supra.
On the basis of the evidence presented, the trial court correctly allowed the jury to decide the issue of punitive damages.
Dependable contends that the trial court erred in refusing its requested jury instruction regarding advice of counsel as a defense to a claim for punitive damages or *807 as a factor to be considered by the jury. Rule 51, Ala.R.Civ.P. states, in part:
"No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds for his objection."
Since Dependable's attorney did not object to the trial court's failure to give this written instruction, this error was not properly preserved and will not be considered on appeal.
Dependable asserts that the trial court erred in denying its motion for JNOV or a new trial on the basis that the compensatory award of $2380.00 was inconsistent with the evidence. On direct examination by Dependable's attorney, Elsie testified as to the value of several of the converted items. From our reading of the record, the total of the values is $1288.00.
It is undisputed that this amount did not include any amount for the value of the belongings of Elsie's deceased son or some clothing belonging to one of Elsie's daughters. However, no evidence was introduced as to the value of these items. Since there was no evidence as to their value, the jury must have speculated in arriving at an award of $2380.00, and an award for compensatory damages cannot be based upon mere speculation. White v. Henry, 255 Ala. 7, 49 So.2d 779 (1950).
A judgment in excess of the amount authorized by the evidence can be upheld on the condition that the excess be remitted. White v. Henry, supra; Treadwell Ford, Inc. v. Wallace, 49 Ala.App. 308, 217 So.2d 505 (1973). Therefore, the award of compensatory damages is affirmed on the condition that, within 28 days, the appellee remit $1092.00 of the $2380.00 compensatory damages; otherwise, that award will be reversed.
The next issue is whether it was error for the trial court to deny the motion for JNOV or a new trial made on the grounds that the punitive damages are excessive. Whether punitive damages are excessive depends upon whether the judicial conscience is shocked, and unless prejudice or passion is indicated the award will not be reversed. Foster v. Floyd, 276 Ala. 428, 163 So.2d 213 (1964); Pinckard v. Dunnavant, 281 Ala. 533, 206 So.2d 340 (1968). There is no requirement that there be any relationship between actual and punitive damages, Foster v. Floyd, supra, and in certain circumstances, nominal damages alone will support an award for punitive damages. Coastal Concrete Co. v. Patterson, 503 So.2d 824, 830 (Ala.1987); Walker v. Cleary Petroleum Corp., 421 So.2d 85 (Ala. 1982); Raley v. Royal Ins. Co., 441 So.2d 916 (Ala.Civ.App.1983). The award of punitive damages is within the sound discretion of the jury, considering all attendant circumstances. Randell v. Banzhoff, 375 So.2d 445 (Ala.1979).
However, since this case involves a post-trial motion claiming the punitive damages to be excessive, it comes within the scope and intent of our recent case of Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). In that case we stated our reluctance to review, without benefit of the trial court's rationale, the issue of remittitur. It was never our intention to automatically remand every case in which "excessiveness" was an issue, and on further review we have narrowed the scope of Hammond so that it does not apply to an award exclusively for compensatory damages where evidence to support the award is clearly in the record. State v. McCurdy Concrete, 507 So.2d 403 (Ala.1987). In the case at hand, the issue is the alleged excessiveness of the punitive damages. This is precisely the situation Hammond, addressed. We again emphasize that Hammond requires the trial court to state its reasons, in the record, for granting or for denying remittitur. Because the record before us contains no stated rationale for the trial court's denial of the motion for remittitur, we remand this cause for the trial judge's reconsideration in light of Hammond.
The trial court, within its discretion, may order a further hearing on the remittitur matter or may comply with these instructions *808 without a further hearing. In any event, the trial court shall report its findings and conclusions to this Court within 28 days from the date of this opinion.
AFFIRMED CONDITIONALLY IN PART; AND REMANDED WITH INSTRUCTIONS AS TO PUNITIVE DAMAGES.
JONES, ALMON, ADAMS and STEAGALL, JJ., concur.

On Return to Remand
SHORES, Justice.
On May 1, 1987, this Court remanded this cause to the circuit court for its consideration of the issue of excessiveness of punitive damages, pursuant to the principles of Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). The trial court has complied with the remand instructions and has refused to order a remittitur. That action was properly supported by the trial court's order on remand. The judgment of the trial court is now affirmed.
AFFIRMED.
JONES, ALMON, ADAMS and STEAGALL, JJ., concur.