Arnold F. Pitt appeals from a judgment based on a remittitur of the jury's award of damages in this products liability case. The defendant, a crane manufacturer, Century II, Inc., did not appeal. We affirm in part; reverse in part; and render a judgment.
The case arose out of an accident that occurred on July 23, 1990, at the State Docks while Pitt, a State Docks employee, was driving a CN128 crane, a 28-ton model, manufactured by Century II, Inc. Tractor and Equipment Company, a distributor of heavy equipment, had lent the crane to the State Docks while the State Docks awaited delivery of a Century II 50-ton crane it had ordered from Tractor and Equipment. Although Pitt had never driven the CN128, he was an experienced crane operator, having worked at the State Docks since 1980.
Pitt started the engine and allowed the air pressure, which operates the brakes, to build up to the proper level before releasing the parking brake and putting the crane into third gear, high range (the lowest gear in the high range), to travel to a work site. Pitt travelled approximately 100 yards to a railroad track, where he applied the brakes; they worked. He then made a right turn before starting up a 15- to 20-degree incline. As he crested the hill, Pitt stepped on the brake pedal a number of times to slow the crane, but the brakes did not respond. The crane did not have an emergency brake. Pitt shifted into reverse and throttled the engine in an attempt to stop the crane. The wheels caught for a second, but the engine died and the crane began what he called "freewheeling" down the hill. Pitt testified that at that point, "I pure panicked. . . . [M]y only instinct was just — I grabbed the transmission and put it in reverse trying to make it stop. . . ." When this did not slow the crane, Pitt jumped off the crane. As a result of this jump, Pitt severely fractured his ankle and lower leg.
On January 2, 1991, Tractor and Equipment Company sued Arnold F. Pitt and his *Page 237 
employer, the Alabama State Docks. The complaint alleged that Pitt had negligently and wantonly operated the 28-ton crane owned by Tractor and Equipment and that Pitt's negligence and wantonness had caused the crane to be damaged. The complaint also contained a negligent entrustment count against the State Docks. Pitt filed an answer and a counterclaim against Tractor and Equipment. Pitt sought damages for his past and future pain and suffering, his past and future mental anguish, physical disfigurement, and permanent disability. He also filed a third-party claim against Harnischefeger Corporation and P H Manufacturing Company, believing them to be the manufacturers of the crane. Both Pitt's counterclaim and third-party claim alleged negligence, wantonness, and liability under the Alabama Extended Manufacturer's Liability Doctrine all based on the absence of an emergency brake on the crane. The State Docks also filed a counterclaim against Tractor and Equipment and a third-party claim against Harnischefeger and P H Manufacturing, both based on property damage caused by the crane. In both claims, the State Docks alleged negligence, wantonness, and liability under the AEMLD. In its answer the State Docks raised the affirmative defense of sovereign immunity.
The trial court dismissed the State Docks as a defendant, but the State Docks remained as counterclaimant and third-party plaintiff. Pitt and the State Docks then amended their third-party complaints to correctly identify Century II, Inc., as the manufacturer of the crane. State Docks also added a breach of contract action against Tractor and Equipment.
The case proceeded to trial. After presenting its case in chief, Tractor and Equipment voluntarily dismissed its claims against Pitt, and, in return, Pitt and the State Docks dismissed their claims against Tractor and Equipment. The trial proceeded on the claims by Pitt and the State Docks against Century II.
At the conclusion of all the evidence, Century II moved for a directed verdict as to Pitt's negligence, wantonness, and AEMLD claims. The trial court granted the motion as to the wantonness count, and Pitt voluntarily dismissed his negligence count. This left the AEMLD count as Pitt's only remaining count.
The jury returned a $14,800 verdict for the State Docks, and a $300,000 verdict in favor of Pitt for compensatory damages. Century II moved for a judgment notwithstanding the verdict, a new trial, or a remittitur. The trial judge denied Century II's motion for new trial, conditioned upon Pitt's accepting a remittitur of $200,000.[1] Pitt did not accept the remittitur, and the court ordered a new trial.
Pitt filed his notice of appeal on March 18, 1993. On appeal, Pitt argues 1) that the trial court erred in ordering a remittitur of the compensatory award, and 2) that the trial court erred in directing a verdict on Pitt's wantonness count and thereby refusing to submit the issue of punitive damages to the jury.
The first issue is whether the trial court erred in ordering a $200,000 remittitur of the compensatory award. The jury awarded Pitt $300,000 in compensatory damages. A directed verdict on the wantonness count precluded the jury's consideration of punitive damages. The trial judge's remittitur order read:
 "On Defendant's Century II's Motion for Remittitur, the Court finds that the jury verdict of $300,000 was not reasonably proportionate to the injury, but rather was excessive and demonstrated prejudice and bias against the manufacturer, and resulted from the jury's perception of Defendant Century II as a 'deep pockets' defendant.
 "The Court is of the opinion that Defendant is entitled to a remittitur of the verdict pursuant to Rule 59(f), A.R. Civ. P. as it is the result of bias, prejudice, and improper motive. [Citations omitted.]
 "The Court further makes the following findings, pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), and *Page 238 Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989).
 "Relationship to harm. The harm was not "grievous." Rather, plaintiff suffered a fractured ankle. [Footnote omitted.]
 "Reprehensibility of conduct. There was no evidence of any reprehensible conduct. There was no evidence of awareness of any problem with the crane or its braking systems. Moreover, there is no need for a deterrent factor, and no need to 'send a message.'
 "There was also no showing of the 'culpability' of defendant's conduct. This case does not represent a pattern or practice of a company acting in known or reckless disregard of the rights of policyholders.
 "Profitability of conduct and financial position.
There was no evidence produced at trial that any other crane manufacturer incorporates three brake systems. Neither was there evidence as to the profitability to the Defendant of not incorporating three brake systems into the product in question. In short, there was no showing of profitability or increase in financial position to defendant to engage in such conduct.
 "Cost of litigation. This was not a complicated case for discovery or trial.
 "Criminal sanctions. Defendant was not criminally sanctioned, a mitigating factor.
"Other civil actions. None, a mitigating factor."
These are the factors set out in Green Oil Co. v. Hornsby,539 So.2d 218, 223-24 (Ala. 1989), as being appropriate factors for a trial court to consider in determining whether a jury award of punitive damages is excessive or inadequate. These are not the factors to be considered when determining whether a jury verdict solely for compensatory damages is excessive.
In Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), we began "by recognizing that the right to a trial by jury is a fundamental, constitutionally guaranteed right, Art. I, § 11, Const. of 1901, and, therefore, that a jury verdict may not be set aside unless the verdict is flawed, thereby losing its constitutional protection." Id. at 1378. In Hammond, we stated that "[i]nsofar as damages are concerned, a jury verdict may be flawed in two ways":
 "First, it may include or exclude a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure. . . . Second, a jury verdict may be flawed because it results, not from the evidence and applicable law, but from bias, passion, prejudice, corruption, or other improper motive. It is this category of cases that most troubles both trial and appellate courts."
493 So.2d at 1378. We then adopted a new procedure that required the trial courts of our state to give reasons for interfering with a jury verdict on the grounds of excessiveness of the damages or for refusing to do so. We required the trial courts "to state for the record the factors considered in either granting or denying a motion for a new trial based upon the alleged excessiveness or inadequacy of a jury verdict."Id. at 1379. This resulted in "Hammond orders," in which trial judges state into the record their reasons for granting or for denying a remittitur.
However, in regard to awards exclusively for compensatorydamages, our holdings have narrowed the scope of Hammond so that a Hammond hearing is not mandatory where the award is clearly supported by the record. CSX Transp., Inc. v. Day,613 So.2d 883, 885 (Ala. 1993). We have explained our reasoning as follows:
 "We recognized at the time of Hammond that numerous cases involving the 'excessiveness' issue were already 'in the pipeline,' and that these cases would have to be decided on a case-by-case basis. It was never our intention, however, to automatically remand every case then on appeal in which the 'excessiveness' issue was raised. In retrospect, we realize that this case (for compensatory damages only) is one that should not have been remanded for further proceedings within the contemplation of Hammond. This is not to say, however, that the Hammond remand procedure *Page 239 
is limited to awards of punitive damages."
State v. McCurdy Concrete, Inc., 507 So.2d 403, 404 (Ala. 1986). See Dependable Ins. Co. v. Kirkpatrick, 514 So.2d 804
(Ala. 1987).
The reason for the difference in approach is that a review of a jury verdict for compensatory damages on the ground of excessiveness must focus on the plaintiff (as victim) and ask what the evidence supports in terms of damages suffered by the plaintiff. A court reviewing a verdict for compensatory damages must determine what amount a jury, in its discretion, may award, viewing the evidence from the plaintiff's perspective.Bridges v. Clements, 580 So.2d 1346, 1349 (Ala. 1991).
In contrast, a review of a jury verdict for punitive damages on grounds of excessiveness must focus on the defendant. TheGreen Oil factors are not all-inclusive, but they require a reviewing court, whether trial or appellate, to begin and end its review of a punitive award by focusing on the defendant and the defendant's conduct. The jury and a reviewing court in a punitive damages case struggle to determine what amount is appropriate to further the aims of punitive verdicts: to punish the particular defendant before the court and to deter others from similar conduct in the future. These considerations have no place in a review of a purely compensatory jury award, where a reviewing court should view the award from the standpoint of the victim.
In the present case, Arnold Pitt proved approximately $12,000 in medical expenses. Dr. Guy Rutledge, Jr., testified concerning the extent of Pitt's injuries. He stated that Pitt's ankle was not merely broken, but was comminuted, broken into multiple fragments. Dr. Rutledge testified that the fracture was "about as bad as it could be with the comminution that he had." Pitt's leg was put in a plaster splint and later in a plaster cast, but there was no solid union of the bone fragments for roughly five months. It was five months before Pitt was able to put weight on the ankle, but even then he did not have full use of it. Dr. Rutledge assigned him a permanent impairment of 10% to his leg. Pitt was 43 years old at the time of the accident and had a life expectancy of over 25 years, during which he would suffer permanent disability.
Pitt offered subjective testimony about his pain, suffering, and embarrassment over his disfigured leg and his limp. He testified that he still has trouble walking on inclines and is in constant pain. He is on "light duty" in his employment at the State Docks because there are some things he cannot do without suffering much pain. Pitt testified that his activities are limited, and that he worries that this fact may affect his job at the State Docks. He said he worries that, although he has a job now, getting another one might be a problem, and that he worries that the injury has affected his ability to provide for his family. His wife testified that his recovery was slow; that even at the time of trial he was still having problems with his leg and was still in pain; and that he often came home from work with his ankle swollen and had to elevate it and apply an ice pack. He said that as of the time of the trial he was still having these "flare ups" occasionally.
The trial court properly left to the jury the determination of whether the plaintiff's injury was caused by a defect in the crane manufactured by the defendant. The jury concluded that it was. The jury was free to believe or to disbelieve the subjective evidence presented by the plaintiff concerning his injury. The jury concluded that $300,000 was an appropriate compensatory award under the evidence, which included the plaintiff's evidence of pain and suffering.
A trial court may not substitute its judgment for that of the jury when the jury has returned a compensatory verdict that is clearly supported by the record. State v. McCurdy Concrete,Inc., supra, 507 So.2d at 404. "A trial court may not conditionally reduce a jury verdict merely because it believes the verdict overcompensates the plaintiff; B M Homes, Inc. v.Hogan, 376 So.2d 667 (Ala. 1979); Vest v. Gay, 275 Ala. 286,154 So.2d 297 (1963); nor may the trial court substitute its judgment for that of the jury." Hammond v. City of Gadsden, supra, 493 So.2d at 1379. *Page 240 
The trial judge concluded in his order that the verdict was influenced by the jury's perception of Century II as a "deep pockets" defendant. We have carefully searched the record to examine the alleged incidents that Century II claims represent bias and misconduct. However, the record does not support a finding of improper voir dire examination, juror misconduct, bias, or improper motive. When there is no evidence before the court of any misconduct, bias, passion, prejudice, corruption, improper motive, or cause not consistent with the truth and the facts, there is no statutory authority to invade the province of the jury in awarding compensatory damages. Northeast AlabamaRegional Medical Center v. Owens, 584 So.2d 1360, 1366
(Ala. 1991).
It is clear from the trial judge's order that his reasons for concluding that the jury verdict was flawed and for ordering the $200,000 remittitur were based upon his analysis of theGreen Oil factors, which focus on the defendant's conduct and which are inappropriate for consideration in regard to questions of excessiveness or inadequacy of a verdict awarding solely compensatory damages — such questions must focus on thevictim. Because it is evident that in this case involving only compensatory damages the trial court considered factors that are relevant only to an award of punitive damages, we must conclude that the trial judge erred when he conditioned his denial of a new trial on Pitt's acceptance of the $200,000 remittitur.
We next consider whether the trial court erred in directing a verdict on Pitt's wantonness count, thus precluding an award of punitive damages. We have defined "wanton conduct" as follows:
 "Wanton conduct involves the conscious doing of some act or the conscious omission of some duty with knowledge of the existing conditions and while conscious that from the doing of that act or by the omission of that duty injury will likely or probably result. Before a person can be said to be guilty of wanton conduct, it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty and that the act or omission produced the injury. Hamer v. Nelson, 516 So.2d 1381 (Ala. 1987)."
Senn v. Alabama Gas Corp., 619 So.2d 1320, 1324 (Ala. 1993). One essential element of a claim for wantonness is causation.Sears, Roebuck Co. v. Harris, 630 So.2d 1018 (Ala. 1993);Tidwell v. Upjohn Co., 626 So.2d 1297 (Ala. 1993).
With regard to whether the court should have submitted to the jury the claim for punitive damages under the wantonness count, we note that our review of the directed verdict is governed by the "clear and convincing evidence" standard of Ala. Code 1975, § 6-11-20. Section 6-11-20(a) allows an award of punitive damages only "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice." Section6-11-20(b)(4) defines "clear and convincing evidence":
 "Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less that beyond a reasonable doubt."
We have carefully researched this record and conclude that Pitt failed to present clear and convincing evidence of wantonness; therefore, his evidence did not warrant the submission of the wantonness count to the jury. We have held that evidence of an intentional failure to comply with generally accepted system safety engineering principles is sufficient to submit the issue of wantonness to a jury.Yamaha Motor Co. v. Thornton, 579 So.2d 619 (Ala. 1991). However, in this case, Pitt offered no evidence that Century II had failed to undertake safety design engineering, or that it was aware that its cranes were prone to brake failure; nor did the evidence indicate that there had been reports of similar incidents. There was, in *Page 241 
fact, no evidence of a "conscious" disregard of a likely injury. See Senn, supra.
For the foregoing reasons, we affirm in regard to the claim for punitive damages; reverse as to the order of a remittitur; and render a judgment, based on the original jury award.
AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
HORNSBY, C.J., and MADDOX, STEAGALL and INGRAM, JJ., concur.
[1] The trial court denied Century II's motion as to the State Docks, and the judgment for the State Docks based on the $14,800 verdict has been satisfied.