Allen S. LEDBETTER, Plaintiff,

v.

UNITED INSURANCE COMPANY
OF AMERICA, Defendant.

Civ. A. No. 92–D–807–E.

United States District Court,
M.D. Alabama, E.D.

Feb. 22, 1994.

See also 837 F.Supp. 381.

Joseph L. Dean, Jr., Opelika, AL, for plaintiff.

James H. Anderson, Christopher Joseph Hughes, Montgomery, AL, M. Christian King, and William H. Brooks, Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is now before the court on the defendant's motion for new trial, or in the alternative, for remittitur, filed December 9, 1993. On December 17, 1993, the court denied the defendant's motion for new trial and ordered the plaintiff to show cause why the defendant's motion for remittitur should not be granted. The plaintiff responded by filing a brief in opposition to the defendant's motion on January 27, 1994.

### Facts

Allen Ledbetter became employed by United Insurance Company of America ("United") on or near November 5, 1989. Ledbetter completed and signed an employment application on October 13, 1989, and later signed the acceptance provision of United's Sales Representative Compensation Plan 1989–200 signifying that he had read the plan and agreed to accept its terms.

As a sales representative in home solicitation sales, Ledbetter sold and collected premiums for debit insurance. While he was collecting premiums on December 4, 1991, in Macon County, Alabama, Ledbetter was robbed of the $4,366.81 worth of premiums that he had previously collected. Ledbetter was struck in the head, injured, and later,

received medical treatment from East Alabama Medical Center.

Ledbetter reported the money stolen to both the police and his superiors at United, Sales Manager Harold "Red" Smith and District Manager Jesse Taylor. After reporting the amount stolen ($4,366.81) and the names of the customers whose premiums had been stolen, Ledbetter was asked by Taylor to sign an agreement which would hold Ledbetter responsible for all the money taken in the robbery. On December 13, 1991, Ledbetter refused to do so. Three days later on December 16, Taylor fired Ledbetter for refusing to sign the agreement. Ledbetter appealed the termination, but evidently, no ruling was made by the regional manager as prescribed by the sales compensation plan.

During his employment by United, money had been deducted weekly from Ledbetter's paycheck to purchase a $2,000 bond as required by United in its compensation plan. From the deductions, Ledbetter had accumulated a bond in the amount of $1,117.12. United denied Ledbetter's request to remit payment to him in the amount of the bond, but instead applied the sum against the amount stolen in the robbery.

Lastly, after Ledbetter was fired, Smith made defamatory statements concerning the reasons why Ledbetter left United's employment. The statements indicated that Ledbetter was terminated because he had taken money from United and that Ledbetter had "faked" the robbery.

After a three day trial, the state law claims of defamation and conversion were submitted to the jury.[1] The jury returned a verdict in favor of Ledbetter and against United in the amount of $1,001,117.12, which included compensatory damages in the amount of $751,117.12 and punitive damages in the amount of $250,000.00.

## Discussion

■ Jury verdicts are presumed to be correct, and that presumption is strengthened when the trial judge refuses to grant a new trial. *Super Valu Stores v. Peterson,* 506

So.2d 317 (Ala.1987). The court's Order of December 17, 1993 denied the defendant's motion for a new trial. Therefore, it is with a strengthened presumption of correctness that the court examines the jury verdict in favor of the plaintiff on the defendant's motion for remittitur.

### A. Compensatory Damages

■ In determining whether an award of compensatory damages is excessive or a result of bias, prejudice, or passion, the relevant standards are found in *Hammond v. City of Gasden,* 493 So.2d 1374 (Ala.1986); *accord Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (approving Alabama's method of review for damages). "A trial court may not conditionally reduce a jury verdict merely because it believes the verdict overcompensates the plaintiff nor may the trial court substitute its judgment for that of the jury." *Hammond,* 493 So.2d at 1379 (citations omitted). While granting a motion for remittitur, the Supreme Court of Alabama opined,

> We do emphasize, however, that only where the record establishes that the award is excessive or inadequate as a matter of law, or where it is established and reflected in the record that the verdict is based upon bias, passion, corruption, or other improper motive may a trial court order a new trial or remittitur.

*Id.* A jury verdict for compensatory damages is flawed and may be reduced or overturned when "it ... include[s] or exclude[s] a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure". *Id.* at 1378.

■ In determining whether an award of compensatory damages is excessive, the focus of the court should be on the plaintiff and the damages that he or she has suffered. *Pitt v. Century II, Inc.,* 631 So.2d 235 (Ala. 1993). In the present case, United published

1. The plaintiff's original complaint included state law claims of breach of contract, conversion, and defamation. The court granted summary judgment in favor of the defendant on the plaintiff's claim for breach of contract.

to the Ledbetter's customers that he had been fired from United because he had "faked" a robbery and had stolen money from the company. Slander per se is committed when a "defendant ascribes conduct to the plaintiff which is incompatible with the proper conduct of his lawful business, trade, profession,.... Charles W. Gamble, *Alabama Law of Damages* § 36–27 (1988). From the jury verdict, it is clear that the jury found that United's comments critically damaged Ledbetter's reputation as a debit agent and materially damaged his career or business.[2] In doing so, United slandered Ledbetter per se.

■ According to Professor Charles W. Gamble in the treatise, *Alabama Law of Damages,*

> If the slander is categorized as per se, ..., damages can be presumed, and the words are actionable without the usual requirement of showing special damages. A plaintiff in slander per se, for example, could recover substantial sums in general damages (based upon such things as physical sickness and loss of reputation) without any proof of special damages (such as lost business or employment).

*Id.* No evidence of harm to the plaintiff's reputation is necessary in this instance. The jury could have properly presumed compensatory damages in the amount of $751,117.12 simply by finding that United made the slanderous comments. The law does not require that Ledbetter prove a specific, calculable amount; the damages are presumed. Therefore, the court finds that the amount awarded in this case was clearly allowable under Alabama law. Moreover, the court finds that regardless of what portion of the compensa-

tory damages were allotted to the slander per se, the amount was not excessive and is not due to be remitted.

■ Furthermore, the amount of compensatory damages awarded by the jury for the conversion is clearly recoverable by law for the tort of conversion. The compensatory damages recoverable for conversion are measured as the value of the property at the time of the conversion, plus interest. Gamble, *supra,* § 36–50. The party claiming conversion has the burden of proving the damages. *Id.*

The amount Ledbetter had accumulated as a cash bond, through deductions from his paycheck, was clearly $1,117.12. It is unclear what amount of the compensatory award was recovered for the jury's finding that United had converted Ledbetter's cash bond. Regardless of what portion of the compensatory damage award was recovered for the conversion, the court finds that the amount was not excessive. The court has previously found that the full amount of the compensatory award would not be excessive for the slander per se claim alone. Therefore, since the slander per se could legally sustain the entire amount, the court finds that the amount of compensatory damages awarded for the conversion, necessarily, could never be determined to be excessive.

■ In *Hammond v. City of Gasden,* the Supreme Court of Alabama outlines a number of factors which a trial court should consider in reviewing whether an award of compensatory damages was excessive or not recoverable as a matter of law. Those factors include but are not limited to the following: the culpability of the defendant's conduct, the desirability of discouraging others

---

2. Wayne Houston, a former debit insurance agent for twenty-two years and the last seven with United, testified to the following at trial what effect a reputation for dishonesty would have on the career of a debit agent.
BY MR. DEAN:
Q. Is an agent's—explain to the jury why it's important for an agent to have a good reputation for honesty among potential customer.
A. Because if your don't it spread like wildfire, you wouldn't—if someone says your are a thief, by that afternoon half the people on your route would know—would think that. You

have to have a good reputation to be a good agent, I feel.
Q. Explain to the jury what the practice is in the debit insurance industry about the relationship between the agents and their customers and when an agent leaves one company and goes to another company?
A. I have found in my 22 years that the person on the route buys from the agent, not the company. I have always felt that. Whether you was with any other company, he likes this agent and that's who they buy from.
Tr. at 9–10.

from similar conduct, the impact upon the parties, and the impact on innocent third parties. *Hammond,* 493 So.2d at 1379.

■ The amount of compensatory damages awarded was clearly recoverable under the law of damages for slander per se and conversion. In reviewing those factors highlighted in *Hammond,* two factors particularly support the jury determination of compensatory damages. First, United's culpability in this case was particularly reprehensible. Both torts were deliberate, not the product of negligence or lack of information, and indicated a distinct disregard, if not disdain, for Ledbetter. The court finds that the culpability of United further supports the amount of the compensatory damage award.

Secondly, the *Hammond* court suggested that the desirability of discouraging others from conducting themselves similarly should also be considered in determining whether an award of compensatory damages should be remitted. In this case, the court finds that similar conduct by others should be strongly discouraged. It is neither in the best interests of the affected individuals nor society as a whole for behavior like that of United's to be transpiring in the business community. Therefore, the court finds the interest of the law in discouraging similar conduct warrants, along with the other factors previously discussed, the denial of the motion for remittitur of the compensatory damages.

### B. Punitive Damages

■ In deciding whether the punitive damages awarded in this case were excessive as a matter of law or were improperly influenced by corruption, prejudice, bias, or passion, the court considers the relevant factors enumerated in *Green Oil Co. v. Hornsby,* 539 So.2d 218 (Ala.1989). *Accord Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (approving Alabama's method of review for damages). Those factors are as follows:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.

(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.

(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.

(4) The financial position of the defendant would be relevant.

(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.

(6) If the criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.

(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.

*Green Oil Company,* 539 So.2d at 223–24 (quoting *Aetna Life Ins. Co. v. Lavoie,* 505 So.2d 1050, 1062 (Ala.1987) (Houston, J., concurring specially).

■ The amount of punitive damages awarded in this case was $250,000. The court finds that the relevant *Green Oil* factors in reviewing that amount are the reasonable relationship of punitive damages with the amount of harm which occurred, the reprehensibility of the defendant's conduct, the wrongful conduct being profitable to the defendant, and the financial position of the defendant.

First, their must be a reasonable relationship with the punitive damages and the compensatory damages. This case involves a punitive damage award of less than one third of the compensatory damages. Considering

United's deliberateness in converting the bond and slandering Ledbetter, the court finds that there is a reasonable relationship between the two awards. Indeed, the court notes that it appeared that the jury considered the size of the compensatory damage award in determining the appropriate amount of punitive damages to be awarded. The court finds that the relationship between the punitive damage award and the amount awarded as compensatory damages is a reasonable one considering that the punitive damages are a fraction of the compensatory damages and that the conduct was intentional. Because the court finds that there is a reasonable relationship between the punitive damages and compensatory damages awards, this factor does not support the conclusion that the jury improperly awarded the punitive damages due to bias or passion, but fortifies the conclusion that the amount was properly recoverable under Alabama law and was not a result of bias, passion, or prejudice.

Secondly, United deliberately published falsehoods about Ledbetter's reputation for honesty and integrity in the community as a businessperson. The court observes that one's good reputation is hard to obtain and even harder to regain (if it can be) once damaged. United deliberately harmed Ledbetter's reputation while exhibiting a disregard for the truth. By doing so, United sowed seeds of doubt in the community about Ledbetter's reputation that can never be uprooted. Because the court finds that United's conduct was reprehensible, the court finds that this factor further supports the amount of punitive damages awarded by the jury.

Thirdly, in evaluating an award of punitive damages, whether the defendant profited from his or her conduct should be considered. It can be inferred that United profited from its action. First, the slander remarks were communicated to past customers of Ledbetter. It appears to the court that the remarks were made to discourage the previous customers from doing business with Ledbetter if he were to work for another debit insurance company. By damaging his reputation as an agent, United profited from the business not going to another company. In addition, it is clear that United profited from keeping the cash bond. The jury found that the cash bond belonged to Ledbetter and that United wrongly converted that bond to its own use. Because the court finds that the United profited from its actions, the preceding factor evidences the fact that the punitive damage award was properly determined by the jury and is not due to be disturbed on a motion for remittitur.

Fourth, United's financial status was not clearly presented to the court. However, it appears that United is valued at approximately $2.4 billion. Considering the $250,000 punitive damage award in that light, the court finds that the amount will have no appreciable effect on United and was not excessive in achieving the goal of punitive damages to punish and deter.

Based on the court's consideration of the preceding *Green Oil* factors as they apply to the present facts, the court finds that the punitive damage award is not due to be reduced and that remittitur of the punitive damages award is not appropriate.

### Conclusion

For the reasons set forth above, it is CONSIDERED and ORDERED that the defendant's motion for remittitur be and the same is hereby DENIED.