RICHARD L. HOLMES, Retired Appellate Judge.
This is an appeal from the trial court’s order granting the motion for summary judgment in favor of Alabama Central Credit Union (credit union) on the counterclaim filed by William Miller and First Capital Associates, Inc. (First Capital).
The credit union originally filed suit against Miller and First Capital for advances under a line of credit and for breach of contract. Miller and First Capital filed an answer and counterclaim, wherein claims for conversion, breach of fiduciary duty, fraud, and a violation of Ala.Code 1975, §§ 7-9-501 through -507, were asserted.
Thereafter, the credit union filed a motion for summary judgment, wherein it alleged that there was no genuine issue of a material fact and that the credit union was entitled to judgment as a matter of law on each count of the counterclaim filed by Miller and First Capital.
After a hearing, the trial court issued an order, granting the motion for summary judgment in favor of the credit union. The trial court deemed the judgment in favor of the credit union to be a final judgment, pursuant to Rule 54(b), A.R.Civ.P.
Miller and First Capital appeal. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
The dispositive issue is whether the trial court erred in granting the motion for summary judgment in favor of the credit union. Miller and First Capital contend that the undisputed facts support all of the claims alleged in their counterclaim and that, therefore, the motion for summary judgment should not have been granted in favor of the credit union.
Rule 56(c), AR.Civ.P., provides that summary judgment is appropriate in situations where there exists no genuine issue of any material fact and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that there exists no genuine issue of a material fact and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie showing that no genuine issue of a material fact exists, then the burden shifts to the non-moving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d 682.
Our review of the record reveals the following pertinent facts: First Capital is a corporation which assists businesses in obtaining Small Business Administration (SBA) loans. Miller is the owner and president of First Capital.
First Capital entered into an agreement with the credit union, under which First Capital would bring potential borrowers to the credit union and assist the borrowers in preparing SBA loan applications. In exchange, the credit union would pay to First Capital certain commission premiums earned on SBA loans. One of the businesses which received such a loan was CESCO Manufacturing, Inc. (CESCO), a company which manufactured machine parts.
*272 CESCO encountered financial difficulties and was unable to meet its loan obligations to the credit union on a timely basis. Thereafter, Miller agreed that First Capital would purchase certain brass inventory from CES-CO to improve CESCO’s financial situation.
First Capital purchased the brass in July 1991. The purchase was financed with funds advanced from First Capital’s line of credit with the credit union. The brass was pledged by First Capital as additional collateral on the line of credit. The brass remained on CESCO’s premises.
In January 1992 the credit union notified the SBA that the CESCO loan was in default. Thereafter, the SBA entered the CESCO premises and took possession of CESCO’s inventory.
Sometime between April and September 1992, an official with the credit union informed Miller that the SBA had taken control of CESCO’s premises and had “locked up” the brass. Further, it is undisputed that sometime prior to November 13, 1992, an official with the credit union told Miller that he should remove the brass from CESCO’s building and that Miller made no attempts to remove the brass from the building.
Miller admitted in his deposition that he was aware the SBA had changed the locks at the CESCO plant and that neither he nor the credit union had access to the premises. Miller testified that he assumed that the SBA considered the brass to be a part of the CESCO inventory. In spite of this assumption, Miller admitted that he never requested access to the CESCO building to retrieve the brass and that he never informed the SBA that the brass was owned by First Capital. In fact, prior to the liquidation auction, Miller was involved in negotiations with the SBA concerning the pinchase of certain assets which were locked in the CESCO building, and yet, he failed to mention to the SBA that First Capital claimed an interest in the brass.
On November 13, 1992, a liquidation auction was conducted by the SBA. The brass was sold, along with CESCO’s remaining inventory. It is undisputed that the credit union did not assist the SBA in collecting the CESCO collateral for the liquidation auction or in deciding what would be sold or the manner in which the sale would take place. In fact, one official with the credit union testified that prior to the liquidation auction, he advised the SBA that several items in the CESCO plant were not subject to the SBA’s financing agreement. After the liquidation auction, the credit union received a pro rata share of the proceeds from the sale of the CESCO inventory from the SBA, and the proceeds were applied to the loan that the credit union had made to CESCO.
Miller and First Capital contend that the credit union is liable for damages because, they say, the credit union is guilty of wrongful conduct in allowing the brass to be sold at the liquidation auction of CESCO’s property. Specifically, Miller and First Capital assert that the credit union failed to notify the SBA that CESCO no longer owned the brass, failed to notify Miller and First Capital of the impending sale of the brass, permitted the SBA to sell the brass for the benefit of the SBA and the credit union on the CESCO loan, and applied all the proceeds from the sale of the brass to the CESCO loan.
In the first count of the counterclaim, Miller and First Capital contend that the credit union converted the brass to its own use. Conversion is wrongfully seizing, detaining, or interfering with another’s property or rights in that property, or illegally assuming ownership of, or illegally using or misusing, another’s property or rights in that property. Chrysler Credit Corp. v. Turner, 553 So.2d 64 (Ala.1989). As previously noted, it is undisputed that the SBA changed the locks on the CESCO building, denying the credit union access to the building or any property contained therein. Further, it is undisputed that the credit union did not assist the SBA in the liquidation auction or its preparations for the auction. In view of the above, we cannot say that the credit union converted the brass to its own use.
In the next count of the counterclaim, Miller and First Capital contend that the credit union breached a fiduciary duty to Miller and First Capital when it failed to protect their interest in the brass by making *273 certain that it was not sold by the SBA. Miller and First Capital concede that the general rule is that the relationship between a financial institution and its customer is not a fiduciary relationship. However, Miller and First Capital contend that the present case falls within an exception to this general rule — that such a relationship may be created in special circumstances. See Baylor v. Jordan, 445 So.2d 254 (Ala.1984).
Miller and First Capital argue that a court must decide on a case-by-case basis whether the facts create a relationship of trust and confidence between the parties. Miller and First Capital contend that they were financially dependent upon the credit union and that because of this financial dependence, the credit union was able to “coerce” First Capital into buying the brass from CESCO. Miller and First Capital further contend that when the credit union failed to protect First Capital’s interest in the brass by making certain that the SBA did not sell the brass, the credit union breached its fiduciary duty. However, we would note that Miller testified that it was his idea that CESCO sell excess inventory to generate cash. Miller stated that he could not recall who suggested that First Capital buy the brass, but that he agreed to the purchase by First Capital. In light of this, we conclude that Miller and First Capital failed to present substantial evidence of the existence of a fiduciary relationship in the present case. K & C Development Corp. v. AmSouth Bank, N.A, 597 So.2d 671 (Ala.1992).
In the third count of the counterclaim, Miller and First Capital contend that the credit union fraudulently misrepresented to Miller and First Capital that the brass had been stolen from the CESCO premises and that as a result Miller and First Capital were denied an opportunity to exercise control over the brass before it was sold. On appeal, Miller and First Capital make no argument regarding this claim. Instead, they argue that the credit union is liable for fraudulent suppression because the credit union failed to inform the SBA that the brass was owned by First Capital and because the credit union failed to inform Miller and First Capital of the impending sale of the brass by the SBA.
In view of the facts of this case, we cannot find that there was substantial evidence presented by Miller and First Capital to support a claim for fraudulent suppression. Baker v. Bennett, 603 So.2d 928 (Ala.1992).
In the final count in the counterclaim, Miller and First Capital contend that the credit union violated the provisions of §§ 7-9-501 through -507. However, in putting forth their argument, Miller and First Capital completely ignore the fact that the credit union was not the party that took possession of the CESCO property and conducted the liquidation auction. Miller and First Capital offer no authority which, under the facts of this ease, would require the credit union to have complied with the provisions of §§ 7-9-501 through -507. Therefore, we find no merit in their argument.
In light of the above, this ease is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.